IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MUNA ADAN IGAL,

                Plaintiff,

      v.                              Civil Action 2:23-cv-4160
                                    Magistrate Judge Kimberly A. Jolson

THE U.S. CONSULATE GENERAL IN
JOHANNESBURG, et al.,

                Defendants.

## ORDER AND OPINION

This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge under 28 U.S.C. § 636(c), is before the Court on Defendants' Motion to Dismiss. (Doc. 15). Defendants' Motion is **GRANTED in part** and **DENIED in part**.

## I.    BACKGROUND

Plaintiff brings this action to compel Defendants to adjudicate her husband's visa application. For fifteen months, the application has remained in limbo, awaiting further action from Defendants. (Doc. 1 at ¶¶ 21–22). During this time, Plaintiff and her husband "have inquired as to the status of his visa application on numerous occasions and received no meaningful responses." (*Id.* at ¶ 24). At this point, Plaintiff does not know what actions, if any, Defendants are taking to complete adjudication of her husband's visa application. (*Id.*).

The Immigration and Nationality Act (INA) provides that a spouse of a U.S. citizen may seek a visa based on their immediate relative status. *Hussein v. Beecroft*, 782 F. App'x 437, 439 (6th Cir. 2019) (citing 8 U.S.C. § 1151(b)(2)(A)(i)). To begin the process, the spouse must file an I-130 Form to petition for classification as an "immediate relative." *Id.* (quoting 8 U.S.C. § 1154(a)(1)(A)(i)). The

United States Citizenship and Immigration Service (USCIS) of the Department of Homeland Security (DHS) then arranges an investigation of the facts in the petition. *Ahmed v. Miller*, No. 19-11138, 2020 WL 3250214, at \*3 (E.D. Mich. June 16, 2020). If the facts are found to be true, "the Attorney General shall . . . approve the petition and forward one copy thereof to the Secretary of State." 8 U.S.C. § 1154(b). After approval, the visa application process next moves to the consular officer. *Id.*; *see also* 8 U.S.C. § 1202(b) ("All immigrant visa applications shall be reviewed and adjudicated by a consular officer.").

Once the spouse is deemed "documentarily qualified," he must complete an interview at the relevant U.S. Embassy. *Akhter v. Blinken*, No. 2:23-cv-1374, 2024 WL 1173905, at \*1–2 (S.D. Ohio Mar. 19, 2024). If "a visa application has been properly completed and executed before a consular officer . . . the consular officer must either issue or refuse the visa." 28 C.F.R. § 42.81(a). Section 221(g) of the INA states that no visa shall be issued if,

> (1) it appears to the consular officer . . . that such alien is ineligible to receive a visa . . . under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa . . . under section 1182 of this title, or any other provision of law[.]

8 U.S.C. § 1201(g).

To understand why an application might be refused, the Court turns to the State Department's website. Courts may "take 'judicial notice of records and information located on government websites because they are self-authenticating under Federal Rule of Evidence 902.'" *Dayton Veterans Residences Ltd. P'ship v. Dayton Metro. Hous. Auth.*, 3:16-cv-466, 2022 WL 1913334, at \*4 (S.D. Ohio June 3, 2022) (quoting *Maxberry v. Univ. of Ky. Med. Ctr.*, 39 F. Supp. 3d 872, n.5 (E.D. Ky. 2014)). The State Department's website offers two reasons why an applicant might be ineligible for the visa now: Either the application is incomplete and more documentation is required, or further

2

administrative processing is needed to determine the applicant's eligibility for the visa. Visa Denials, *INA Section 221(g) – Incomplete Application or Supporting Documentation*, U.S. Dep't of State, Bureau of Consular Affs, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visa-denials.html (last visited June 7, 2024).

Turning to the facts of this case, Plaintiff is a United States citizen residing in Westerville, Ohio. (Doc. 1 at ¶¶ 1, 2). In July 2021, she filed an I-130 petition for her husband. (*Id.* at ¶ 18). That petition was approved in November 2021. (*Id.* at ¶ 19). Over a year later, in January 2023, the United States Consulate General in Johannesburg interviewed Plaintiff's husband. (Doc. 15 at 3). After the interview, his visa was refused under 8 U.S.C. § 1201(g), and his case was placed in administrative processing. (Doc. 1 at ¶¶ 21–23; Doc. 15 at 7–8). According to Plaintiff, this delay significantly harms her and her family. (*Id.* at ¶¶ 7–10). Plaintiff has been separated from her husband since 2021. (*Id.* at ¶ 7). As a result, Plaintiff has raised their daughter on her own, and her husband has never met his child. (*Id.* at ¶ 8–9). Because Plaintiff has no support system in the United States to help her with childcare, she works part-time and worries about losing her job if she misses work. (*Id.* at ¶ 9). Currently, she says her part-time warehouse job barely covers her expenses, and her husband, who has not found employment, cannot support her financially. (*Id.* at ¶ 9–10).

Plaintiff brings three claims in this action. She says Defendants violated the Administrative Procedure Act (APA) by failing to adjudicate her husband's visa application within a reasonable time. (*Id.* at ¶¶ 25–29 (citing 5 U.S.C. § 706(1))). Along the same lines, she petitions for a writ of mandamus to compel Defendants to adjudicate her husband's visa application. (*Id.* at ¶¶ 30–36). Lastly, Plaintiff alleges that Defendants' delay violates her substantive and procedural due process rights under the Fifth Amendment of the United States Constitution. (*Id.* at ¶¶ 37–41).

3

Defendants have moved to dismiss this case. (Doc. 15). They argue the Court lacks subject-matter jurisdiction over Plaintiff's claims, and the doctrine of consular nonreviewability bars Plaintiff's claims. (*Id.* at 5–9). Alternatively, Defendants say that Plaintiff "has not plausibly alleged" an unreasonable delay in adjudicating her husband's visa application. (*Id.* at 10–15). Finally, Defendants assert that Plaintiff's due process claims fail to state a claim for relief. (*Id.* at 16–18). The Motion is ripe for review. (*See* Docs. 15, 16, 17).

## II.     STANDARD

Two rules govern the Motion. First, Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss for lack of subject-matter jurisdiction. Jurisdictional challenges under this Rule come in two forms, facial and factual. *See Ohio Nat. Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir. 1990). A facial attack "goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). For a factual attack, a court "has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings." *Id.* at 759. In doing so, a court "has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.*

Here, Defendants do not say which type of jurisdictional challenge they make. (*See* Doc. 15 at 4 (discussing the standard of review for factual challenges to jurisdiction, but not clarifying if their attack is factual or facial)). And the parties are not aligned on what evidence the Court may consider. Defendants rely exclusively on the pleadings. (*See* Docs. 15, 17 (providing no exhibits nor citing evidence outside the pleadings)). This implies their motion is a facial attack. *Amerkhail v. Blinken*, No. 4:22-cv-00149, 2022 WL 4093932, at *2 (E.D. Mo. Sept. 7, 2022) (construing a Rule 12(b)(1)

4

motion to dismiss as a facial attack on jurisdiction where Defendants cite only the plaintiff's complaint and judicially noticeable facts). In contrast, Plaintiff provides additional evidence that was not in her Complaint, including emails she received from the U.S. Consulate General in Johannesburg and screenshots of statuses of other visa applications. (Docs. 16-1, 16-2).

Because Defendants brought the Motion and rely solely on the pleadings, the Court construes their challenge as a facial one and will not consider the additional evidence Plaintiff provides. *Cf. Campbell v. Miller*, 855 F. Supp. 2d 458, 464 (S.D. Ohio 2011) ("Defendant attached evidence in support of its motion to dismiss. Accordingly, Defendant's motion is construed as a factual attack."); *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 859 (6th Cir. 2022) (noting that defendants submitted declarations and additional evidence to launch a factual attack on the court's jurisdiction); *Skidmore v. Access Grp., Inc.*, 149 F. Supp. 3d 807, 810 (E.D. Mich. 2015) ("As matters outside the complaint may be considered in deciding a Rule 12(b)(1) motion raising a factual attack. . . there may be merit to Plaintiff's argument that he needs discovery to properly respond to the motion."). Therefore, in evaluating the motion to dismiss, the Court determines only if Plaintiff has sufficiently alleged a basis for subject-matter jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). In doing so, the Court must "construe the complaint in a light most favorable to the plaintiff [and] accept as true all of plaintiff's well-pleaded factual allegations[.]" *Mich. Southern R.R. Co. v. Branch & St. Joseph Cntys. Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002) (quoting *Ludwig v. Bd. of Tr. of Ferris State Univ.*, 123 F.3d 404, 408 (6th Cir. 1997)).

Turning to Rule 12(b)(6), Defendants also seek to dismiss this case for failure to state a claim upon which relief can be granted. (Doc. 15 at 2); Fed. R. Civ. P. 12(b)(6). To survive such a motion, the complaint must "contain more than bare assertions or legal conclusions" and "must present enough facts to state a claim to relief that is plausible on its face." *Total Benefits Planning Agency, Inc. v.*

5

*Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (internal citations and quotations omitted). Again, all factual allegations made in the complaint must be "presumed true and all reasonable inferences" must be "drawn in favor of the non-moving party." *Jabbar v. Graham*, No. 2:21-cv-999, 2021 WL 4745717, at *2 (S.D. Ohio Oct. 12, 2021) (quoting *Total Benefits Planning Agency, Inc.*, 552 F.3d at 434).

## III. DISCUSSION

### A. Subject-Matter Jurisdiction

The Court first determines whether it has subject-matter jurisdiction. *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430–31 (2007). ("[A] federal court generally may not rule on the merits of a case without first determining it has jurisdiction over the category of claim in suit (subject-matter jurisdiction)[.]"). Defendants raise two jurisdictional challenges. They say Plaintiff has not identified "any statute or regulation that creates a nondiscretionary duty to adjudicate her husband's visa application." (Doc. 15 at 5). Defendants also argue that the action is moot because Plaintiff's husband's visa was refused under 8 U.S.C. § 1201(g). (*Id.* at 7–8). The Court addresses each in turn.

#### 1. Discrete, Nondiscretionary Duty

To start, Plaintiff seeks relief under both the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. § 706(1). (*See* Doc. 1). Under the Mandamus Act, the Court may "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Similarly, the APA authorizes the Court to "compel agency action unlawfully withheld and unreasonably delayed." 5 U.S.C. § 706(1). "When a [plaintiff] seeks both mandamus relief and relief under the APA, courts apply the same principles and standards both to determine jurisdiction and to assess the merits." *Nelson v. U.S.*, 107 F. App'x 469, 471 (6th Cir. 2004).

6

So, under either Act, Plaintiff must show that Defendants owed her a non-discretionary duty and failed to act upon this duty. *See Muminov v. Sessions*, No. 1:18-cv-1034, 2018 WL 5298386, at *3 (N.D. Ohio Oct. 25, 2018); *Xu v. Chertoff*, No. 06-cv-15398, 2007 WL 2221401, at *1 (E.D. Mich. July 31, 2007) ("For Plaintiff to establish that subject matter jurisdiction is created by a federal question involving either the Mandamus Act or the APA, he must show that these acts would give him a right of action based on the facts he has plead."). In her Complaint, Plaintiff identifies three potential sources of a nondiscretionary duty: 8 U.S.C. § 1153(a); 22 C.F.R. § 42.21(a); and 8 U.S.C. § 1202(b). (Doc. 1 at ¶ 33).

First, 8 U.S.C. § 1153(a) provides the scheme in which family-sponsored immigrant visas will be allocated. Plaintiff seemingly argues that since the statute says "[a]liens subject to the worldwide level . . . for family-sponsored immigrants **shall** be allotted," the word "shall" creates a nondiscretionary duty to allocate those visas. (Doc. 1 at ¶ 33 (emphasis in original)); *see* 8 U.S.C. § 1153(a) ("Aliens subject to the worldwide level specified in section 1151(c) of this title for family-sponsored immigrants shall be allotted visas as follows . . . ."). But as Defendants note, this statute does not address the circumstances here. (Doc. 15 at 5). The statute addresses unmarried sons and daughters of citizens, unmarried sons and daughters of permanent residents; spouses of permanent residents; married sons and daughters of citizens; and brothers and sisters of citizens. 8 U.S.C. §§ 1153(a)(1)–(4). Nowhere does the statute discuss spouses of United States citizens. *See id.* Thus, this statute does not create a nondiscretionary duty that would allow this Court to grant the relief Plaintiff seeks.

Next, 22 C.F.R. § 42.21(a). This regulation provides that "[a]n immediate relative [of a U.S. citizen] **shall** be documented as such unless the U.S. citizen refuses to file the required petition." (Doc. 1 at ¶ 33 (emphasis in original)). Again, Plaintiff suggests in her Complaint that the word "shall" creates a nondiscretionary duty to adjudicate her husband's visa application. (*Id.*). Defendants say this

provision "simply addresses how the State Department *should* classify a noncitizen spouse with an approved, immediate relative petition." (Doc. 15 at 5–6). Defendants are right. The regulation states that "[a]n alien who is a spouse . . . of a United States citizen . . . shall be classified as an immediate relative" if the consular officer has received from DHS an approved I-130 petition and "is satisfied that the alien has the relationship claimed in the petition." 22 C.F.R. § 42.21(a). It further says that the alien shall be documented as an immediate relative unless other circumstances occur. *Id.* Yet this classification status does not bear upon the ultimate approval decision. As described above, once the spouse is classified as an immediate relative, he or she must still complete an interview and have his or her application "reviewed and adjudicated by a consular officer." *See Akhter*, 2024 WL 1173905, at *2. So, this regulation also fails to provide "a relevant source of mandatory authority" for the circumstances here. *See Azam v. Bitter*, No. 23-4137, 2024 WL 912516, at *5 n.5 (D. N.J. Mar. 4, 2024).

But 8 U.S.C. § 1202(b) requires more consideration. It provides: "All immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). Plaintiff says this language creates an affirmative duty to process visa applications. (Doc. 16 at 9). In response, Defendants say that this section of the statute, when read as a whole, "merely cabin[s] the State Department's discretion as to *who* may review and adjudicate visa applications; it does not mandate that all applications actually be adjudicated." (Doc. 15 at 6–7 (emphasis in original) (internal quotations omitted)).

Both readings have support from courts across the country. On Plaintiff's side, many courts have found that "the use of the word 'shall' indicates a mandatory nondiscretionary duty to review and adjudicate immigrant visa applications" to finality. *Iqbal v. Blinken*, No. 2:23-cv-1299, 2023 WL 7418353, at *6 (E.D. Cal. Nov. 9, 2023) (quoting *Gomez v. Biden*, 2021 WL 3663535, at *20 (D. D.C.

Aug. 17, 2021)); *see also Kassem v. Blinken*, No. 1:21-cv-1400, 2021 WL 4356052, at *5 (E.D. Cal. Sept. 24, 2021); *Russell, et al. v. Blinken, et al.*, No. 23-cv-520, 2024 WL 1908814, at *3 (W.D. Wisc. May 1, 2024) ("[T]he court concludes that § 1202(b) and § 42.81(a) impose a mandatory duty to take all steps necessary to adjudicate properly filed visa applications, including scheduling petitioners for consular interviews."); *Filazapovich v. Dep't of State*, 560 F. Supp. 3d 203, 235 (D. D.C. Sept. 9, 2021).

Still, other courts agree with Defendants that the statute does not create a nondiscretionary duty. The cases Defendants cite reason that 8 U.S.C. § 1202(b) sets out what documentation visa applicants must provide and to whom they must submit them—not whether the State Department must adjudicate them. *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 14–15 (D.D.C. Sept. 27, 2022); *Mueller v. Blinken*, 682 F. Supp. 3d 528, 534–35 (E.D. Va. 2023) (citing *Babamuradova*, 633 F. Supp. 3d. at 14); *Ali v. U.S. Dep't of State*, 676 F. Supp. 3d 460, 469–70 (E.D. N.C. 2023); *Zarei v. Blinken*, No. 1:21-cv-2102, 2021 WL 914606 (D. D.C. Sept. 30, 2021); *Nasab v. Blinken*, No. 1:22-cv-2084, at *1 (D. D.C. Sept. 26, 2022); *Khamrabaeva v. Blinken*, Nos. 22-cv-1219, 2400, 1381, 2474, 2128, 2022 WL 4446387, at *5–6 (D. D.C. Sept. 24, 2022).

Notably, neither side cites relevant precedent from this District, but the Court looks to those cases for guidance. In *Alwan v. Risch*, a plaintiff filed I-130 petitions for her parents, which were approved. No. 2:18-cv-73, 2019 WL 1427909, at *1 (S.D. Ohio Mar. 29, 2019). Consular officers interviewed her parents, but their cases were placed in administrative processing. *Id.* The plaintiffs filed a complaint for a writ of mandamus, noting that no final decision had been made on the visa applications. *Id.* Those facts are strikingly similar to Plaintiff's case, whose husband's immediate relative visa application also sits in administrative processing.

The procedural posture of *Alwan* was somewhat different, however, because Defendants did not answer the complaint. *Id.* at *2. So, on review of a motion for default judgment, the Court found that

"Defendants have a nondiscretionary, ministerial duty to act" upon the visa applications under the INA and the relevant regulations. *Id.* at *3. Although the Court did not cite directly to 8 U.S.C. § 1202(b), it relied upon *Patel v. Reno*, which addressed the denial of immediate relative visa applications under 8 U.S.C. § 1202(b). *See id.* (quoting *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1987), for the proposition that consular officers are required by law to act on visa applications). The Court cited 22 C.F.R. § 42.81(a), which instructs that a "consular officer must issue the visa [or] refuse the visa under INA 212(a) or [8 U.S.C. § 1202(b)]" once an application has been "properly completed." 22 C.F.R. § 42.81(a); *see Alwan*, 2019 WL 1427909, at *3. In sum, by leaving the applications in administrative processing, Defendants had, according to the Court, failed to act upon that duty. *Id.* at *4–5. This holding suggests the Court has jurisdiction to hear Plaintiff's case.

More recently, the Court held that 8 U.S.C. § 1202(b) creates a "mandatory duty to review and adjudicate visa applications." *See Akhter*, 2024 WL 1173905, at *4. There, Plaintiff filed a petition for an immigrant visa for her son. *Id.* at *1. Although his petition had been approved, he had not been interviewed. *Id.* at *2. Upon review, the Court suggested that the statute creates both a duty to schedule an interview within a reasonable time and to fully adjudicate a visa application. *Id.* at *5 ("And this Court is unpersuaded by the argument that the action required by § 1202(b) is not incumbent on Defendants until a formal visa 'application' has been made through appearance 'before a consular officer.'").

*Akhter*'s reasoning is persuasive. Plus, if the Court were to accept Defendants' reading of the statute, applicants like Plaintiff's husband could "continu[e] to wait indefinitely" for formal adjudication of their immigrant visa applications. *Alwan*, 2019 WL 1427909, at *3. "[T]his failure to act – the failure to issu[e] or deny the visas without formally rejecting the request – is precisely the type of agency inaction the APA seeks to guard against." *Id.* at *4; *see also Iqbal*, 2023 WL 7418353, at *7

(finding that the APA requires agencies "to include a matter presented to it . . . within a reasonable time" and that "[t]o hold otherwise would be to sanction the perpetual delay of governmental obligations that are clearly mandated by law"). In sum, the Undersigned finds that 8 U.S.C. § 1202(b) places a mandatory and nondiscretionary duty to review and adjudicate immigrant visa applications like Plaintiff's. The Undersigned now turns to whether this case is moot.

       *2.*    *Mootness*

Defendants argue this case is moot because Plaintiff's husband's visa application was refused under 8 U.S.C. § 1201(g). (Doc. 15 at 7). But Plaintiff argues the refusal is not final because her husband's application remains in administrative processing. (*See* Doc. 16 at 12–13; Doc. 1 at ¶¶ 22–24). "The mootness doctrine . . . 'requires that there be a live case or controversy at the time that a federal court decides a case." *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019) (quoting *Burke v. Barnes*, 479 U.S. 361, 363 (1987)). This is because "Article III of the Constitution limits the jurisdiction of federal courts to actual cases and controversies." *Hussein*, 782 F. App'x at 441. "Ultimately, the test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Sullivan*, 920 F.3d at 410 (internal quotation omitted). When actions occur so that the "court is unable to grant the requested relief," a case is moot. *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986).

A closer look at the relevant statute and regulations is instructive here. The State Department says that when a visa is refused under 8 U.S.C. § 1201(g), either more information or "additional administrative processing" is required. Visa Denials, *INA Section 221(g) – Incomplete Application or Supporting Documentation*, U.S. Dep't of State, Bureau of Consular Affs., https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visa-denials.html (last visited June 7, 2024). As Defendants acknowledge, a visa may be refused under this statute, but

applicants may have an opportunity to provide more information to establish their eligibility. (Doc. 15 at 7); *see also Ramirez v. Blinken*, 594 F. Supp. 3d 76, 87 (D.C. 2022) (discussing that visa refusals subject to administrative processing may be reversed). Or, after additional administrative processing, "the consular officer might conclude that an applicant is now qualified for the visa[.]" U.S. Visas, *Administrative Processing Information*, U.S. Dep't of State, Bureau of Consular Affs., https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (last visited June 7, 2024). What's more, 22 C.F.R. § 42.81(c) discusses additional steps that must occur after an initial refusal under 8 U.S.C. § 1201(g). The regulation states that if the grounds for refusal "cannot be overcome . . . the principal consular officer . . . shall review the case without delay, record the review decision, and sign and date the prescribed form." 22 C.F.R. § 42.81(c). If the principal consular officer does not agree with the initial refusal, he or she must refer the case to the State Department for an advisory opinion or "assume responsibility for final action on the case." *Id.* This language presumes that the initial refusal is not a final decision.

Defendants say that a refusal under 8 U.S.C. § 1201(g) is an adjudication, and the "fact that the State Department is undertaking administrative processes that might assist Plaintiff's husband in overcoming the grounds for refusal has no bearing on whether the consular officer adjudicated the application." (Doc. 15 at 7). While Defendants cite two relevant cases in support, the Court finds neither to be compelling. First, in *Elhabash v. United States Department of State*, the plaintiff applied for a J-1 visa to continue his medical education in the United States. No. 09-5847, 2010 WL 1742116, at *1 (D. N.J. Apr. 27, 2010). But after his interview, his visa application was refused and placed in administrative processing. *Id.* The court found that this refusal was a denial rendering the plaintiff's case moot. *Id.* at *3. Yet this case involved a factual attack to jurisdiction, meaning that, unlike here, "[n]o presumption of truthfulness" attached to the complaint's allegations. *Id.* at *2. Further,

12

defendants in *Elhabash* submitted additional evidence supporting their allegation that plaintiff's refusal was a final decision. *Id.* at *2 (discussing an affidavit submitted by defendants stating that emails from the embassy saying plaintiff's visa refusal was temporary were incorrect). Here, Defendants have submitted no such evidence. (*See generally* Docs. 15, 17).

Second, Defendants cite *Svensborn v. Keisler*, where the applicant's diversity visa was refused and subjected to administrative processing. No. 07-C-5003, 2007 WL 3342751, at *1 (N.D. Cal. Nov. 7, 2007). The applicant also "received a Form OF-194 stating that she was found ineligible to receive a visa." *Id.* at *4. Citing this letter, the court concluded that even though she requested reconsideration, there was no dispute that her visa application had been denied. *Id.* at *4. But here, the parties have not alleged that Plaintiff's husband received a similar letter, nor have they agreed that the decision on his visa is indisputably final. (*See* Doc. 15 at 7 (noting the possibility that the State Department could find avenues for overcoming the initial refusal of Plaintiff's husband's visa)). Therefore, this case is also unpersuasive when compared to the facts presented here. *See Jahangiri v. Blinken*, No. 23-2722, 2024 WL 1656269, at *5 (D. Md. Apr. 17, 2024) (finding *Svensborn* "inapt" where plaintiffs did not request reconsideration of a final decision and instead had unadjudicated applications waiting in administrative processing).

Defendants also rely on *Martinez v. Mayorkas*, No. 1:13-cv-485, 2014 WL 4908447, at *3 (S.D. Ohio Sept. 30, 2014). But this case involved decisions on I-130 petitions, not the refusal of a visa under 8 U.S.C. § 1201(g). *Martinez*, 2014 WL 4908447, at *1 (summarizing the facts surrounding the denial of the plaintiffs' Form I-130). Further, the only relief sought by the plaintiffs was a writ of mandamus to compel the defendants "to act upon Plaintiffs' Forms I-130 and I-485." The Court found that both forms were denied, and no pending applications remained before the United States Citizenship and Immigration Services. *Id.* at *3. Therefore, the case was moot. *Id.* But here, Plaintiff's husband's

application has not been adjudicated and remains in administrative processing. For these reasons, the Court finds this case inapplicable to the circumstances presented here.

The cases Plaintiff cites fit better here. (Doc. 16 at 13–14). In both cases, applicants' visas were refused under 8 U.S.C. § 1201(g) and placed into administrative processing. *See Nine Iraqi Allies Under Serious Threat Because of Their Faithful Service to the U.S. v. Kerry*, 168 F. Supp. 3d 268 (D. D.C. 2016); *Vulupala*, 438 F. Supp. 3d at 93. The courts determined that the refusals were interim decisions and not final adjudications rendering the plaintiffs' claims moot. *See Nine Iraqi Allies*, 168 F. Supp. 3d at 284–85 (holding that refusals of special immigrant visas were not final decisions when the applications were subsequently placed in administrative processing); *Vulupala*, 438 F. Supp. 3d at 99 (finding that the refusal and placement into administrative processing of an H1-B visa was not a final decision). In finding so, the courts reasoned that administrative processing appears to be mandatory in some cases and "not a discretionary opportunity for reconsideration." *Nine Iraqi Allies*, 168 F. Supp. 3d at 284. So, in practice, administrative processing serves as "a pre-requisite to reaching the [final] decision itself." *Id.*; *see also Vulupala*, 438 F. Supp. 3d at 99 (finding *Nine Iraqi Allies*, 168 F. Supp. 3d at 284, persuasive). Other courts have reached the same conclusion. *See, e.g.*, *Carter v. U.S. Dep't of Homeland Sec.*, No. 1:21-cv-422, 2021 WL 6062655, at *3 n.3 (D. D.C. Dec. 22, 2021) ("This Court has held, consistent with other courts in this district, that refusals followed by 'administrative processing' are not "final decisions[.]"); *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 87 (D. D.C. Mar. 22, 2022) ("While a visa application must be either granted or refused at an initial interview, that refusal is often not final."); *Amerkhail*, 2022 WL 4093932, at *4–5.

So, too, here. Despite Defendants' assertion that a final decision has been made, "a refusal may be entered for 'administrative processing,' and applicants may have an opportunity to provide additional information to establish eligibility." *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 87 (D.C. 2022).

14

That might be the eventual outcome in this case. But the parties provide no explanation why Plaintiff's husband's application was refused, if he received a form outlining the reason for the refusal, or what information, if any, is needed to process his visa. (*See generally* Docs. 15, 16, 17); *cf. Elhabash*, 2010 WL 1732116, at *2 (writing that the applicant's visa refusal was temporary); *Svensborn*, 2007 WL 3342751, at *4 ("[I]t is undisputed that [the visa applicant] received a Form OF-194 stating that she was found ineligible to receive a visa."). So, the refusal here may not be as final as Defendants say.

Further supporting the conclusion that this case is not moot, the Court could provide the relief Plaintiff seeks. *In re Kramer*, 71 F.4th 428, 438 (6th Cir. 2023) ([In determining if a case is moot], "[w]e ask whether it would make a difference to the legal interests of the parties if we granted the relief sought." (internal quotation omitted)); *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004) (noting a court must determine if it would be "impossible for the court to grant any effectual relief" (internal quotation omitted)). In her Complaint, Plaintiff requests an order compelling Defendants to complete processing and adjudication of her husband's visa application. (*See* Doc. 1 at ¶ 42); *Jahangiri*, 2024 WL 1656269, at *5 ("Plaintiffs' claims are not moot because they do not challenge the original refusal of their petition, but rather seek an order compelling Defendants to adjudicate their visa petition."). Theoretically, that relief is available, since Plaintiff's husband's visa application remains in administrative processing without a final decision. Therefore, based upon the information currently available to the Court, the Undersigned concludes this controversy is live.

**B.    Doctrine of Consular Nonreviewability**

Similarly, the Court rejects Defendants' argument that the doctrine of consular nonreviewability bars Plaintiff's claims. (*See* Doc. 15 at 8–9 (asserting that Plaintiff fails to state a claim under Rule 12(b)(6)). This doctrine "shields a consular official's decision to issue or withhold a visa from judicial review." *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 11 (D. D.C. 2022). But no

final decision has been made on Plaintiff's husband's visa. *Joorabi v. Pompeo*, 464 F. Supp. 3d 93, 100 (D. D.C. 2020) ("[T]he doctrine of consular nonreviewability clearly applies to final visa determinations, but it does not apply to challenges regarding decisions that are not yet final."). Instead, his application was refused under 8 U.S.C. § 1201(g) and waits in administrative processing for unknown reasons. And "a majority of courts . . . have held that the doctrine of consular nonreviewability does not bar claims to compel adjudication of a visa petition undergoing administrative processing." *Jahangiri*, 2024 WL 1656269, at *6 (citing cases); *see also Nine Iraqi Allies*, 168 F. Supp. 3d at 276–77, 289–92 (holding that the doctrine of consular nonreviewability does not apply to visa applications that are in administrative processing, including one initially refused under 8 U.S.C. § 1201(g)); *Al-Gharawy*, 617 F. Supp. 3d at 15–17 (finding that the doctrine does not apply to cases where applicants' visas were refused under 8 U.S.C. § 1201(g) and subjected to additional administrative processing); *Vulupala*, 438 F. Supp. 3d at 98–101 (same); *Abassi v. Guadiosi, et al.*, No. 1:23-cv-1573, 2024 WL 1995246, at *3–4 (E.D. Cal. May 6, 2024) (same). As a result, the Court finds the doctrine inapplicable to Plaintiff's case.

### C.    Unreasonable Delay

Now to the merits of Plaintiff's claims. Defendants say that she "has not plausibly alleged that any delay by the State Department is unreasonable." (Doc. 15 at 10). Accordingly, they ask the Court to dismiss Plaintiff's case under Rule 12(b)(6). (*Id.* at 2). To survive at this stage, Plaintiff must sufficiently allege that the delay in adjudicating her husband's visa application has been unreasonable. *Iqbal*, 2023 WL 7418353, at *7.

Briefly, "district courts shall compel agency action unlawfully withheld or unreasonably delayed." *Akhter*, 2024 WL 1173905, at *5 (quoting 5 U.S.C. § 706). When determining whether an agency action has been unreasonably delayed, courts consider six factors:

(1)     the time agencies take to make decisions must be governed by a rule of reason;

(2)     where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3)     delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4)     the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5)     the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6)     the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 451–52 (6th Cir. 2022) (quoting *Telecomms. Rsch. And Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*")).

"[T]he mere passage of time cannot sustain a claim of unreasonable delay." *Escalona v. U.S. Dep't of Homeland Sec.*, No. 1:20-cv-613, 2021 WL 5546710, at *5 (W.D. Mich. Aug. 23, 2021). Instead, "what constitutes an unreasonable delay in the immigration context depends to a great extent on the facts of the particular case." *Id.* (internal quotation omitted); *see also Gonzalez v. Cuccinelli*, 985 F.3d 357, 376 (4th Cir. 2021) ("A claim of unreasonable delay is necessarily fact dependent[.]"). For this reason, the Sixth Circuit and other courts have found that the reasonableness inquiry should not be resolved on a motion to dismiss. *See, e.g.*, *Barrios Garcia*, 25 F.4th at 452; *see also Iqbal*, 2023 WL 7418353 ("[T]he reasonableness inquiry is best resolved ultimately on a full factual record."); *Tailawal v. Mayorkas*, No. 22-cv-01515, 2022 WL 4493725, at *4 (C.D. Cal. Aug. 18, 2022); *Thomas v. Pompeo*, 438 F. Supp. 3d 35, 44 (D. D.C. 2020); *Chhajed v. Jaddou*, 2:23-cv-483, 2024 WL 1332258, at *8 (S.D. Ohio Mar. 27, 2024); *but see Preston v. Kentucky Consular Center*, No. 6:22-cv-015, 2022 WL 3593052, at *20–25 (E.D. Ky. Aug. 22, 2022) (analyzing the *TRAC* factors on a motion to dismiss); *Telukunta v. Mayorkas*, 2:21-cv-10372, 2021 WL 2434128, at *2–4 (E.D. Mich. June 15, 2021) (same).

The Court finds it cannot resolve the reasonableness question without more evidence. For example, as to the first factor, Defendants say that Plaintiff has not sufficiently alleged that they failed

to follow a rule of reason. (Doc. 15 at 10–11). Plaintiff seemingly argues, however, that Defendants' ordering of agency priorities lacks any rule of reason at all. (Doc. 16 at 20). What's more, Plaintiff's dearth of evidentiary support for her allegations is understandable, considering no discovery has been conducted. *Akhter*, 2024 WL 1173905, at \*6 (finding discovery important for determining an agency's rule of reason).

Nonetheless, Defendants suggest in their briefing that a backlog of other visas awaiting adjudication is behind the delay in this case. (Doc. 15 at 13 (stating that adjudicating Plaintiff's husband's application "would simply place him ahead of similarly situated visa applicants)). Even so, usual administrative delay does not absolve Defendants of their duty to adjudicate visas within a reasonable time. *Tang v. Chertoff*, 493 F. Supp. 2d 148, 158 (D. Mass. 2007) (noting that a lack of agency resources is a "policy crisis," but that the Court may not "relieve the pressure by excusing [immigration agencies] from their statutory duty and letting the cost fall on immigrant plaintiffs"); *Alkeylani v. Dep't of Homeland Sec.*, 514 F. Supp. 2d 258, 266 (D. Conn. 2007) (same). More still, Defendants offer no evidence for their argument, such as whether the consulate in Johannesburg has a first-in-first-out policy for adjudicating applications or how many visa applicants are in administrative processing status. (*See* Doc. 15 at 10–13 (offering no policy behind the delay in adjudicating the visa at issue here)). Indeed, taking Plaintiff's allegations as true, her husband's application has been in this status for fifteen months without any indication as to why his application needs additional processing or what information is needed to adjudicate it. (Doc. 1 at ¶¶ 21–22).

Still, Defendants say some delays, like the one in this case, are reasonable as a matter of law. (*Id.* at 11 (stating that since some delays are "unreasonable on [their] face," others must "be reasonable on their face")). "But whether a rule of reason exists for agency action cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be

18

unlawful[.]" *Raouf v. U.S. Dep't of State*, 23-cv-302, 2023 WL 8020484, at *8 (D. N.H. Nov. 20, 2023) (internal quotation omitted). Defendants do not provide a specific reason, supported by evidence, for the length of the delay. Without more, the Court cannot determine in whose favor this factor weighs. *See id.* (rejecting the defendant's arguments that a delay was unreasonable on its face, since the defendant offered no "agency constraints or procedures that could justify the delay").

Similarly, the fourth factor involves the effect that mandating processing of Plaintiff's husband's visa would have on "agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. Defendants argue that Plaintiff's lawsuit asks the Court to "place [her husband] ahead of similarly situated visa applicants." (Doc. 15 at 13). But again, Defendants provide no support for this argument. And while the U.S. Consulate General in Johannesburg may be "resource- and personnel-depleted," Defendants do not explain the rationale behind their procedures and processing times. *Barrios Garcia,* 25 F.4th at 454 (citing *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D. D.C. 2003)). So, again, more evidentiary development is needed.

The third and fifth factors ask the Court to consider the delay's effects on the "human health and welfare" at stake and "the nature and extent of the interests" prejudiced by the delay. *Mahmood v. U.S. Dep't of Homeland Sec.*, 21-1262, 2021 WL 5998385, at *8 (D. D.C. Dec. 20, 2021) (citing *TRAC*, 750 F.2d at 80). In *Barrios Garcia*, the Sixth Circuit found that the plaintiffs' allegations of harm were sufficient to allege an unreasonable delay at the motion-to-dismiss stage. *See* 25 F.4th at 452. In that case, the plaintiffs alleged that the delay meant they could not obtain identification, health care, insurance, or lawful employment. *Id.* And they discussed their inability to "reunite with their family" who were outside of the United States. *Id.* Plaintiff alleges similar harms here, including financial difficulties, emotional distress, and family separation. (Doc. 1 at ¶¶ 7–10). Under Sixth Circuit precedent, that is enough for Plaintiff's case to survive a motion to dismiss.

Considering Plaintiff's allegations of harm and the lack of evidence supporting Defendants' arguments, this case should proceed beyond the pleadings. While Defendants may ultimately prevail in showing that the delay here is not unreasonable, they must raise these issues at a later phase in litigation. For now, Plaintiff has sufficiently stated a claim for relief, and Defendants' Motion to Dismiss on this front is **DENIED**.

    **D.**     **Due Process**

Finally, the Court turns to Plaintiff's due process claims. In her Complaint, Plaintiff alleges that Defendants' actions violate both her substantive and procedural due process rights. (Doc. 1 at ¶ 41). Defendants move to dismiss these claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (*See* Doc. 15 at 16–18).

"[A] plaintiff adequately alleges a substantive due process claim where the plaintiff pleads that a statute or government action burdens a fundamental right[.]" *Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006). Similarly, to state a procedural due process claim, a plaintiff must identify a liberty or property interest at stake. *Id.* at 496. To establish such an interest, "the plaintiff must demonstrate that the Constitution or a federal or state statute grants [her] a protected right." *Id.* (citing *Alamario*, 872 F.2d 147, 152 (6th Cir. 1989)).

In her Complaint, Plaintiff does not identify a fundamental right for her substantive due process claim. (Doc. 1 at ¶¶ 37–41). Nor does she identify a liberty or property interest sufficient for procedural due process protections. (*Id.*). Plaintiff says only that she "has a statutorily created entitlement to adjudication of her husband's visa application" and "Defendants' delay. . . constitutes a deprivation of [her] protected interest without due process." (Doc. 1 at ¶ 39). These statements wholly fail to identify what type of due process claim she attempts to bring. *See Davila v. Cohan*, 23-cv-1532, 2024 WL 711618, at *9–10 (S.D. Cal. Feb. 21, 2024) (dismissing a plaintiff's due process claims connected to

her spouse's visa application for pleading deficiencies). Plaintiff also fails to cite any cases in support of this claim. (*See* Doc. 1 at ¶¶ 37–41).

In her response to the Motion to Dismiss, Plaintiff raises new arguments for her due process claims. (Doc. 16 at 23 (stating she has a "life and liberty interest" in 8 U.S.C. § 1202(b), as effectuated by 5 U.S.C. § 555(b) and § 706(1) and that she has a fundamental right to family unity)). Because Plaintiff did not raise these points in her Complaint, the Court may not consider them. *See Johnson v. Metro. Gov't of Nashville and Davidson Cnty., Tenn.*, 502 F. App'x 523, 543–44 (6th Cir. 2012) ("Although Plaintiffs' response to the motion to dismiss expanded their . . . claims, the district court was limited, as are we, to the facts and legal claims as raised in the pleadings.").

But even if the Court allowed Plaintiff's new arguments, her briefing does little to help her claims. For example, Plaintiff submits she has a life and liberty interest in 8 U.S.C. § 1202(b), as effectuated by 5 U.S.C. § 555(b) and § 706(1). (Doc. 16 at 23). But she offers no additional explanation in support of this assertion. (*See* Doc. 16 at 23). In addition, while Plaintiff cites *The Board of Regents of State Colleges v. Roth*, 408 U.S. 644 (2015), which addressed whether an assistant professor had a property interest in his re-employment, Plaintiff offers no argument as to how this case helps her. (Doc. 16 at 23). Even more, the Sixth Circuit has held that, for procedural due process claims, "[a]n American resident has no right to have [her] noncitizen spouse enter or remain in the country." *Baaghil*, 1 F.4th at 433 (citing *Alamario*, 872 F.2d at 151); *see also Bangura*, 434 F.3d at 496 ("A denial of an immediate relative visa does not infringe upon [the] right to marry.").

Plaintiff also states she has an "implied fundamental right to family unity" and cites *Obergefell v. Hodges*, 576 U.S. 644 (2015). (Doc. 16 at 23). The Sixth Circuit has rejected similar arguments in the past, finding that no substantive due process right attaches to a spouse's visa application. *See Baaghil v. Miller*, 1 F.4th 4217, 433–34 (6th Cir. 2021) (finding no substantive due process right to

bring a spouse into the United States); *Bangura*, 434 F.3d at 495 (upholding a statute enacted to prevent immigration fraud "even assuming . . . that it interferes with [plaintiff's] fundamental right to marry"). Plaintiff does not cite or attempt to distinguish her case from this precedent.  (*See* Doc. 16 at 23).

In conclusion, Plaintiff fails to identify in her Complaint which rights and interests entitle her to due process protections.  (*See* Doc. 1 at ¶¶ 37–41).  Because the Court will not conjure allegations on her behalf, Defendants' Motion to Dismiss is **GRANTED for these claims**.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 15) is **GRANTED in part** and **DENIED in part**.  Plaintiff's due process claims are **DISMISSED**.  Plaintiff's remaining claims may proceed for further development.

IT IS SO ORDERED.


Date:  June 7, 2024                                      /s/ Kimberly A. Jolson
                                                         KIMBERLY A. JOLSON
                                                         UNITED STATES MAGISTRATE JUDGE